I see that the defendants are represented by two counsel. Have you agreed how to split your time up? Yes, we have, Your Honor. I'm going to do my best to reserve eight minutes for my colleague and reserve one minute each for our rebuttals. All right. Good morning, Judge Ikuda, Judge Bea, Judge Hurwitz. My name is David Porter. I'm an assistant federal defender with the Eastern District of California, and I represent the appellant Robert Cephas Brown, Jr. This, Your Honor, is a straightforward case. The district court simply and clearly failed to make the findings required to impose the two-point enhancement for substantial endangerment to the solvency of 100 or more investors. Did they give you the names of any of these investors and what their financial status was? The names were included on lists. There were separate enhancements in this case for amount of loss and for number of victims. The 250 enhancement and the 100-victim enhancement. My question to you is this. The enhancement for 100 victims requires, and I'm paraphrasing it, endangering their financial solvency, et cetera, right? Correct. Yes. Now, if one of those investors had lost $50,000 and his name was Warren Buffett, it wouldn't really involve his financial solvency. Clearly. Was there any evidence from which the sentencing judge could determine that the loss to these victims endangers their financial solvency? We believe that there is not, Your Honor. And let me explain. I'll ask the same thing of the government later on. Yes. The probation officer, Ronnie Priup, recommended the two-point enhancement. Mr. Brown filed a timely objection. And the probation officer then failed to provide a list of the 100 qualifying victims. Instead, what he did was submit to the district court 29 victim impact statements. The district court said, well, I've read these. Twenty-seven of the 29 show complete financial disaster for those people. And therefore, I'm going to extrapolate and say, oh, well, there's clearly enough evidence here that there were 100 or more qualifying victims. Well, let's look what was in the record and see if what we've got in the record is we all agree there's 400 victims, right? Four hundred and five as to Mr. Brown. Right. But not as to the amount. No, no. But we agree there's 405 victims. That was the other enhancement for which he got a six-point bump. Okay. What was the nature of the criminal activity? It was a Ponzi scheme. Right. But in particular, what was going on here? He was promising people rather astronomical returns. He was giving the earlier investors money that he secured from later investors. Is there something in the nature of this scheme which makes it more probable than not? Remember, it's a strange statute. It talks about financial security being substantially endangered. Yes. Is there something in the nature of this scheme that makes it more or less endangered? Yes. And it makes it less. And here's the reason. It's a Ponzi scheme. And earlier investors are given money from the later investors. Some of those investors were quite satisfied with their return. Now you're getting to the question I'm asking. Right. Is there any evidence in this record about how many people were left holding the bag at the end of the Ponzi scheme? I don't believe so, Your Honor. I mean, there were 405 victims according to how you identify what victims are. Because I guess I'm positing on my own mind a Ponzi scheme in which Warren Buffett is the last victim and puts in enough money to cover everybody else. Nobody's financial security was maybe that was substantially endangered. I don't know what that means. But at least they got all the money back. Can we tell from this record how this Ponzi scheme worked? I mean, the trial lawyer in this had investigators looking at the records from here until doomsday, trying to figure out what money went in, what money went out. The district court did look at some evidence, right? It looked at the 128 wise investors and their amount. And 100 wise investors gave 15 to 550,000 each. And the victims were middle class people. And then he had the 79 victim impact statement. So I think there may have been some other evidence. But that was the bulk of the evidence. So we need to determine whether that was enough to show by preponderance that there were at least 100 victims. So why was none of that enough to show by preponderance that there were at least 100 victims whose solvency was endangered? I mean, we don't have any rule that you can't make reasonable estimates, unlike the number of victims. There's no rule one way or the other about endangering solvency. Yes. Let me point out to the court, because you said, as the government says in its brief, that, well, the court really didn't extrapolate. You could use the testimony at trial of some of the victims there. You could use the testimony at sentencing of some of the victims, the victim impact statements and so forth. The district court relied on a large variety of sources for its ruling. And we dispute that quite vigorously, Your Honor. And I point you to excerpts of record, our excerpts of record at page 24, line 11, where the court ruled on this. And it said, for the record, I am overruling the objection. And this makes clear that he was relying on probation solely. I think based on the information that probation has before it and probation's representations to the court and probation's determinations that this is applicable, I do find that the government has proven, et cetera. Okay. To set that to one side, even if we do look at the other materials that the government is now saying support the enhancement, what do they point to? They point to 16 victims at trial, one who testified at sentencing, 10 of the victim impact statements that were read aloud by the prosecutor at the sentencing hearing, at sentencing. And so that adds up to 27. Then there were 27 letters that were sent and that the prosecution wrote. So that 27 and 27 equals 54. So even if we go along with the idea that the court could look at more than just the 27 that the district court looked at at sentencing, we have only 54 at that point. Right. But then the question is, do we need to have, and I think the position that you're taking, I understand, is that there has to be specific evidence of 100 victims and evidence of their insolvency. But that's not, I don't see that rule. We have, we do the sentencing guidelines say for amount of loss you can estimate. It doesn't say anything about endangering solvency. So we don't have a rule one way or the other. But could we say you can estimate or the district court have the discretion to assess based on the evidence before it and to assess that, yes, more likely than not, 100 people have their solvency? I think it's rather clear. The guideline itself says 100 or more financial insolvency or financial security has to be endangered. I think that it's not an unreasonable burden to show which of the 100 have these instances. And when the court is talking about Application Note 3 that the government relies on about amount of loss, okay, in United States versus ORR, O-R-R, at 567 Fed 3rd, page 610, 10th Circuit, 2009 case, they explicitly say that that Application Note does not apply outside of the amount of loss. And that there's a reason for that. The amount of loss is very, very complicated. It's very tricky to determine amount of loss in fraud cases. There are 16 different levels under the amount of loss. So the number of victims is more than the number of victims. The number of victims is about two to three times the number of victims, and the amount of loss is about 100 million. Here we're talking about 100 or more victims. It does not make sense to apply that. Do we know the total amount of loss here? Yes, Mr. Brown did not object to a 20-level enhancement for losses between 7 million and I believe it's 20 million. But I believe it was somewhat over 7 million. Given that, and I asked you a question that I knew the answer to, given that, and the number of victims, and the requirement of the statute only that financial security be threatened, is that enough for the judge to make a... It is not. And I would point the court to excerpts of record at page 34 at line 20. And this is one of the letters that the prosecutor read during the sentencing. And this is from Donald Pong. And it says, the 5,000 we lost came from our savings and was money that we planned to use for a vacation abroad. We've never been able to take that vacation. Period. I'm asking because the words financial security to me are mushy. Absolutely. Not being able to take a vacation abroad does not, I would argue, does not say that I am substantially endangering Donald Pong's financial security. Well, why? Where do I get that from the statute or from the sentencing guidelines? I think you get that from the two sentences that he wrote to the prosecutor to read before the... I'm asking you whether, does financial security mean I have to worry about whether I can eat or does it mean I have to worry about whether I can live the way I had planned living before I entered into this Ponzi scheme? I think it's more the former. And I think that in statutory construction you look at the words that are joining, the word that you're looking at, and financial security is right alongside of insolvency. So it means perhaps more than insolvency. Or less. I'm sorry. Yes, less than insolvency, but not that we couldn't take our vacation abroad this year. So I think that the statute... A separate question on sentencing. At the end of the day, the judge gave your client a within guideline sentence. Correct? Yes, without any recovery, any cooperation at the high end of the guideline. Right. I guess my question is, were we to accept your argument, shouldn't we remand for resentencing? I always ask these questions in sentencing cases. A judge operates, gives the sentence under some assumptions. Right. Which is at the end of the day, I think this is the right sentence. And if we take one of the assumptions out, does it do we give a restructured sentence, or do we say to the judge, well, don't make that assumption anymore and see what sentence you would give? I think you give a restructured sentence in this case under the case of Washington, which is cited in Mr. Edding's brief at 714 Fed 3rd, 1358. This is an 11th Circuit case, but it goes very well with what happened here. The government had the opportunity. It was a timely objection. Government had the opportunity. Probation had the opportunity to present this evidence, supply it to the district court. Didn't work. There should be no second bite at the apple in this case. I'd like to just very briefly address our 5K and unreasonable sentence. You're coming close to your eight minutes, so I want to give your co-counsel an opportunity to object. Thank you. Just very briefly on that, the courts, the government quite correctly gauged Mr. Brown's culpability in light of this cooperation and recommended a sentence of eight years, four months. The court sentenced Mr. Brown to almost twice the time recommended by the government, 15 years and eight months, and, in fact, substantially longer than the probation officer recommended without considering the cooperation of a sentence more than three years in addition to what the probation officer was recommending. I thought that Mr. Kirk considered it but said under the 3553A factors he would give Mr. Brown a deadline sentence, and with the 5K, then it was sort of a wash. That's what he said. He did say something to that effect, Your Honor, but I think that the court should pay particular attention to excerpt of record 67, line 7, where the court, and the government is suggesting he didn't deny the 5K motion. That's just not true. The court said, quote, your 5K motion, comma, I denied that. It was a denial of the 5K motion. There was a conflation of acceptance of responsibility in section 3 of the guidelines with 5K cooperation. Is this a procedural error or is it a substantive one? That is the question. I read what the judge wanted to do was say, okay, maybe you cooperated, but the other stuff is so bad that you're not going to get any credit for it or much credit for it. Did he just say the wrong words? No. I think it's both procedural and substantive. It's procedural in the way he denied the 5K motion. It's substantive in that he's conflating the two guidelines sentences. That's a legal error that this court should correct. And finally, we believe it's an unreasonable sentence, and that is a substantive argument. Good morning. John Ballas on behalf of Duane Eddings. I wanted to start by just following up briefly with what Mr. Porter said on the insolvency, more than 100 insolvent victims argument. We joined in that argument. We have a somewhat stronger argument in that the government has now conceded that there were less than 250 victims attributed to Mr. Eddings, and that the number of victims for Mr. Eddings for guideline purposes is 159, so that even if you could estimate or extrapolate, which I agree with Mr. Porter, you can't, but even if you could, you would have to find for Mr. Eddings approximately 200 victims. And I think two-thirds of the victims would fit that definition of financial insolvency. I want to ask you a question about what the PSR said. I think the PSR said, or the Prohibition Officer, I'm sorry, when he testified, said he had at least 79 statements that said mostly the same thing as the ones he had submitted to the court. Is that evidence enough to now we have 79? I don't know how they relate to your clients' victims as opposed to your pro-counsel's clients' victims, but we can figure that out. Assuming they all related to your clients' victims, would that be enough? I would say no for the same reasons Mr. Porter said, that in terms of number of victims, they should show 100 victims. And I think second, too, the Probation Officer is just flipping through this and giving his general sense, and I don't think that's really sufficient evidence, even by preponderance of the evidence. So tell me how this would work in a trial according to the way you see it should work. What would the sentencing proceeding look like? You stipulated to the number of victims, so we don't have to, the government doesn't have to put on evidence of how many victims there are. How do they prove their case as to financial security? They would show how much they lost, and they would have to also show their financial condition, and then make some kind of loss in their overall financial condition that had met that somewhat mushy standard. Okay. So again, I may be using Mr. Eddings' numbers for Mr. Brown or Mr. Brown's numbers for Mr. Eddings, but assume there's at least $7 million of losses. Now, I know that may not be the same in your case. And assume there's 100 victims, so the least loss, you can do the math, $70,000. Is that enough to say, look, that's a big enough number for the number so that I can find it? I would say absolutely not, because all the victims lost entirely different amounts. And some victims, if you lose $5,000 or $10,000, that very well may not substantially. But I guess I'm asking in terms of the government establishing its prima facie case and then allowing you to come back and attack it. You know who the victims are, too. Can't the government say we have an average loss here of $70,000 or $80,000, and for the victims it's $70,000, and for the victims it's $80,000, and for the victims it's $70,000. So that's enough for us to meet our preponderance burden on this case. I don't think that even shows that that amount of loss shows substantially endangered insolvency, unless you have also information about their financial condition as a whole. So you envision a sentencing proceeding in which 250 financial statements of the victims will be brought in and presumably sentenced. And that's the way you get to say, well, they had $2 million, so they lost $50,000. That's not enough. I've never seen a proceeding that involves this. I'm not sure it has to go to that level of detail, but they would have to maybe submit a declaration under oath that they lost their entire life savings or all their retirement savings or something that would meet the standard. And I think that the judge erred here, because he basically made a finding that Mr. Eddings had an important role in the offense, but not that he exercised control or directed any other individuals. I found this part a little confusing. There was some evidence about a Mac McConnell that, and it wasn't clear what he was doing or how Mr. Eddings was supervising him, but the court seemed to think that was very important. Well, the court said that I couldn't tell. Mr. McConnell was the one person that the government presented as an employee or someone that he might have supervised. And the parts in the excerpt of record, their excerpt of record that they cite to don't really show that Mr. Eddings supervised Mr. McConnell. And then also when it was presented to the court, and I cited this in my reply brief, the court said, I can't really tell whether or not it's Mr. Eddings supervised Mr. McConnell. And I think it's clear from his findings in his record that he made the aggravating role enhancement apply not on the basis of that he supervised or exercised control over anyone else, but just that he had a big role in recruiting a lot of people and giving a lot of money. So the sentencing guidelines for that C, 3B1.1C, does have language in the application notes saying, well, if it's a small criminal enterprise, then you don't actually have to supervise it enough if you were a leader. Should we look at that part of the sentencing guidelines in evaluating this? Well, I think even if you would, he's not a leader in any sense. He basically was just recruiting people, taking money, taking his cut, and then giving it off to Mr. Brown. Is he an organizer? No. Not organizing. Surely he's recruiting additional people for this scheme, isn't he? He's not organizing criminal participants or anyone that's involved in the scheme. What he's doing is he's recruiting investors. Well, that's my question. Is recruiting investors in this one for an existing scheme enough for the organization enhancement? I would say no. Well, I know why. I know you say it, but tell me why not. Because it's not organization. It's just recruitment. And recruitment in and of itself does not qualify as organization, I think, under the standard meaning of the term. I think my time is up. Thank you. May it please the court. Michael Anderson on behalf of the United States. Eddings and Brown created a scheme where they tried to get every dollar they could from every single victim that they could bring in. That is part of what the court considered when the court applied the 100 or more victims that had their financial security substantially It was the nature of the scheme and the class of the victims which were supported by the other evidence before the court. The nature of the scheme is a Ponzi scheme. It does not necessarily follow that every Ponzi scheme targets people of middle and lower economic ability. Look at Bernie Madoff, right? What evidence is there that these people were substantially endangered? When I say nature of the scheme, I mean this specific scheme. I don't mean Ponzi schemes. I mean what was happening in this specific case, which was they were targeting working class people. How do we know that? Based on the testimony that the court heard at trial, based on the victim impact statements that the court received, and based on the larger number of victim impact statements that went to the probation office, which the probation officer talked about in court. Were there 100 victim impact statements? There were, but on the record, the probation officer... I've got about 79 so far. He said, I've got 79, I'm still counting, and then later in the record, I believe it's page 19 of Brown's excerpts of record, the court says, the probation officer tells me there's between 100 and 150 victim impact statements all saying pretty much the same thing. I asked the opponents this question, and let me ask it to you again. Is there something in the nature of the recruitment of the victims of this scheme that provides some evidence of whether or not this would impact their financial security? So I understand that there are seminars held, and Mr. Brown has access to some people. I'm trying to figure out whether there's some evidence in this record that suggests who the victims were, other than what Judge Baez just asked you about. There's the testimony from the victims about who they were, but there's also the way that that program was being pitched to these individuals. So they had Mack McConnell, and this goes to another issue, but his role in part was to help people get mortgages on their house, to pull out equity in order to invest in the scheme. So there's evidence in the record in that. There's also evidence that people were cashing in 401K accounts, that they were dipping into savings, and then there was also testimony in the specific victim impact statements about the way that Eddings would latch on to somebody, drag all the money they could out of them. In one case, a woman talked about how her sister thought that Eddings was her boyfriend, took all of her money, and then when she had no more money to give, dropped her. Mr. Henderson, you mentioned that there was some evidence that 100 to 150 victim statements earlier on. Could you give me the citation to that? I believe it's at Brown's excerpts of record, page 17 and 19 are the key parts, but it's not independent. It's the court saying probation tells me that there are 100 to 150. But not in his testimony. If probation told the judge, where did the probation tell the judge, in the PSR, in the probation officer's testimony? In the records unclear, Your Honor. So that's not supported by the record. Not unclear. Not in a clear way. What happened is somehow probation indicated that to the court, but you're correct. It's not explicit on the record. So the judge said there's 100 to 150 victim statements, but you agree that there's nothing that you can point to in the record to support that determination. I agree, Your Honor. Nevertheless, there's sufficient information, because there's a list of victims talking about how much each victim put into the scheme. There's the calculated loss. There's also evidence of which victims bore the brunt. I believe it was Judge Hurwitz who bore the brunt of the losses. And we know who it was. It was Eddings victims. And the reason we know it's Eddings victims is because the trial testimony showed that Eddings victims came in last in the scheme. Their money was being taken in in order to make Ponzi payments, not just to that class of victims, that approximately 150 people, but also to the earlier victims of Brown. They were bearing the brunt of all the Ponzi payments at the end as the conspirators were running out of money. By the way, I'm not sure I agree with the notion that the people who got paid at the front end of the Ponzi scheme didn't have their financial security endangered. It was contingent on somebody finding another sucker at the far end. Certainly. But we can look down a list of victims and see how much they lost. We have the total of the victims. There's a chart that's at excerpts of record, page 230. This is government supplemental excerpts of record, page 236. And that chart is the overall chart of the money that was brought into the Wise account for these final 150 or so victims. And it shows that approximately, I'm rounding, approximately $8 million was brought in and only approximately $1.9 million was paid out in Ponzi. There was a loss of essentially seven. That's a stipulated loss that we got before. Right. And we also know from the record in the trial testimony that that $1.9 million wasn't just going back to those 145 or so victims. That was money going to all of the victims in the scheme. So there's no way that a large number of victims were made substantially whole based on the amount of money that was going back. So what do we know about the financial situation of those victims, or is that a requirement of proof for you? Well, so the guideline substantially endangered, it's an inherently subjective measure. And I think that's why it's also susceptible to this estimation that's done for loss. So if you have at some point the court is going to have to make estimates over what substantially endangered means. And in this case, the court had reliable information to do that. It had the testimony, the nature of the scheme, the types of people that were involved in the scheme. It had weeks of trial testimony. It had a declaration from the IRS agent regarding how much was lost by various victims. It had stipulations on loss. And it had 27 victims who testified or filed declarations. What you're saying is that the district court judge could estimate that the remaining 63 were similar to the 27 that were presented. Do you have any authority for that? No, Your Honor. This guideline provision hasn't been considered by this court before, but it's reasonable under the circumstances. What's the reason in these circumstances you say it's reasonable? Give us a reason why we can project from 27 to 100. Because the court's going to have to make some sort of estimate as to what the damage was. We have to figure out some thing to say, so we call it a reason. Because of the nature and circumstances of this particular offense, that's consistent with what the defendants were trying to do. Was there evidence that the Ponzi schemers targeted poor people and only poor people, not rich people? Or middle-class people. No, there was no Ponzi scheme who testified was not a rich person. There were no wealthy people involved in this case. Everybody was targeted to give the maximum amount of money that they could free up, including money from their home equity, including from their 401k. Was there something about this scheme which would not inveigle people of wealth? It was not a particularly sophisticated organization, but it wasn't targeted toward that. It was people that they were running into through the community, getting referrals. They didn't have access to anybody wealthy or anything like that. One of the difficulties in this case is I don't have any doubt that more than 100 people had their financial security endangered. The question is what burden of proof do you have to put that into record? You could have waited until the probation officer had gone through his 100 statements and he could say they're all substantially the same, and I think that would be fine for me. But I'm trying to figure out what burden of proof the government has here and how it discharges it. I know what the burden is, preponderance. How does it discharge that burden? Your Honor, we gave a list of the victims who had given substantial amounts of money, and then based on the victim impact statements that were consistent, we attempted to show or showed that there was a financial security. Should we extrapolate from the victim impact statements? In this case, yes, Your Honor. I don't know that that would be true in every case, but on the specific facts here, yes. Based on the trial testimony, based on the nature of the victim impact statements, based on the fact that they're overwhelmingly in one direction and that the probation officer was saying, look, they're all substantially the same. So there wasn't... So you're saying that the 79 of which he looked at were substantially the same. Yes, Your Honor. Can you address the 5K argument? Yes. The judge did say denied. He did use the words denied. Well, that's a word that means denied. It does. And really there were two questions, right? Was the court going to give Mr. Brown credit for having cooperated, which would be the 5K motion, and was the court going to give Mr. Brown what the government was asking for, which was a 100-month sentence rather than a 188-month sentence? If we put aside the final, the bottom line, which the district court said, I'm just looking at the bottom line. If we just look at its ruling on the 5K motion, was that an abuse of discretion? No, Your Honor. Why not? Because the court had heard the trial testimony, heard from Mr. Brown, heard from the victims, both in trial and from the victim impact statements, and the court had the ability to determine what an appropriate 5K was. The court disagreed with the government. It's entitled to do that and has a lot of discretion to do it. The government doesn't always like that, but that's the reality, is that sometimes a district court will do it. But isolate the 5K motion for a second. Just forget about the 355-3 factors. Why wasn't it an abuse of discretion to deny the 5K motion? There apparently was substantial cooperation here. You said so. Government said so. The other side said so. Why wasn't there? See, if the judge had said, look, I'm going to grant you, I'm going to grant the 5K motion, but I've got this debit on the other side that wipes it out. And I think that's effectively what the judge did. I would think it would be okay. But that's not what the judge did. The judge said, yeah, no 5K for you, and all this other bad stuff. So why wasn't that wrong? I think what happened is the judge did effectively grant the 5K. The judge was very clear that he was going to do an upward departure, but he wasn't going to do the upward departure because of the cooperation. But what the judge said was, it's a guideline sentence, so there's no downward departure in the sense of we're not going outside the guidelines range. He said it's a wash. I'm giving you this 5K credit, but I'm taking away. But our problem is that the district court has to be procedurally correct on the guidelines part, and then when it gets to the 3553A part, then the district court has substantial discretion. So we have to determine whether the district court procedurally erred in its determination of the 5K motion. And the other side said, well, the district court just mixed it up with acceptance of responsibility, which is a legal error. Is that correct? No, Your Honor. The court did distinguish it from acceptance of responsibility and granted the acceptance of responsibility credit under the guidelines, but then was talking about what the impact of the cooperation versus the sentence the court would otherwise have imposed in this case, which would have been an upward variance. The court wanted to go above the guidelines range, and only the cooperation kept Mr. Brown from getting a higher sentence than he got. So you're saying effectively the judge granted the motion because he said, but for your cooperation, I would have gone higher? Yes. And I think he does use the word denied. Even though he said denied. But it's denied. I'm denying what the government is asking for. I'm denying what you're asking for, Mr. Brown. I'm not giving you 80 months or 100 months. I'm giving you the sentence which is in the guidelines and balances out the upward variance. If I could rephrase your argument, he denied your motion, denied Mr. Brown's motion, but nonetheless gave 5K credit. Is that your position? That's our second position. I think the first position is he really did actually grant this motion. Okay. So I'm still not clear why we shouldn't put the government to the burden in a case like this of making the paper case so that the Court of Appeals can make it for you. You're asking for the enhancement of 100 victims or more. You get the other side to stipulate how many there are. If you can't get them to stipulate how much loss each one went through or something, go get the victim impact statements. Give us a record to review. Why shouldn't we put you to that burden? Well, here, Your Honor, you're reviewing for clear error, the factual determination of the court. And I don't think that the district court clearly erred in relying upon the facts that it relied upon. It sat through that trial and it reviewed the... That's only so if you assume we can allow extrapolation. Inherently, you're going to have to because the nature of substantially endangered is going to require... I think there's no evidence, so it has to be... Well, it's not a lack of evidence. There was a challenge by the defense, and the government presented victim impact statements. I don't think that there's no requirement that 100 victims come in or that there be a declaration from each of the 100 victims, but... Isn't that exactly the requirement of the text of the enhancement? That there be 100 victims whose financial condition was substantially endangered? And there were 100 victims, Your Honor, because we had a list of over 100 victims who all had put in substantial amounts of money into the Ponzi scheme. We had evidence regarding the general financial condition of the victims in the scheme and then what the victims said.  And I guess my question is whether that's enough for preponderance or whether more was required. Yes, Your Honor, under a clear air standard. Thank you. And I guess my question was more in the nature of a lament, which is that in a case like this where you surely could have done it and done it pretty easily, would you please do it in the future? Because otherwise you're asking us to, in effect, construct a case that would have been easily constructed by the government. Absolutely, Your Honor, and when I looked back at the transcript and saw that we only got to 79 on the record and not to 100, it's a lesson learned. Could we turn to the leadership role enhancement, which I found troubling for Mr. Eddings, and explain why the district court was correct there? Yes, Your Honor, again, this one's also on the clear air review. The evidence that the court had before it was first Eddings' own admissions that he was a back office manager, which were then supported by other facts that were in the record. There's numerous parts where Eddings is Brown's partner, SCR 63, 99, 170, 178, among others. Eddings had exclusive control over assets once the Wise account was opened, SCR 112, 115, 116, 117. 117 to 120, which is a factor in Application Note 3 that's important. Eddings managed the referrals. He had various people that were working for him who were then recruiting victims into the scheme. What was the evidence of people working for him, and is that a necessary thing for there to be evidence of? The Application Note suggests that it's not, and that's Application Note 3. However, in this case, there was evidence that was supportive of that, which would be, for example, one of the victim's cousins was working for Eddings, SCR 31 to 32. That was as his personal trainer or something. I mean, the evidence was pretty squishy there. It was both. So personal trainer, but also he was bringing in a lot of business to the scheme. Tell me what's the evidence about Mr. McConnell. Mr. McConnell, Eddings recruited a victim. Mr. McConnell comes to the home of that victim afterwards with Mr. Eddings in order to do a mortgage to pull the equity out of that person's home to invest. Eddings introduces McConnell at numerous points, and they work together. They say they're working together. And then there's also the chart, which was a chart that was an internal document from the scheme, showing that Eddings was the manager of what they called investments that were brought in by other people, including Mr. McConnell, who was one of the recruiters under Eddings on that chart. And that's SCR 261 to 264. Did I hear you say that McConnell played a role in procuring equity? A victim to get a mortgage? Yes, Your Honor. What's the citation on that? SCR 33 to 34. Based on that record, Your Honor, although it's admittedly a more difficult lift than some of the other guidelines enhancements, the court didn't clearly err in finding that enhancement. Your Honor, none of the other issues have been addressed by defense counsel, but I'm happy to answer any questions in my remaining minute regarding any other issues. With that, Your Honors, they created a scheme where they tried to get every dollar out of these individuals. I think the court made its rulings accordingly. Thank you. You know, Judge Hurwitz talked about averaging the loss and the number of victims. You've exhausted your time, but let's give you a minute. Thank you very much, Your Honor, I appreciate that. I call this the good enough for government work argument. And Rule 32 of federal criminal rules has the procedure, and this is the procedure. The timely objection is made under the Doe case that we cited in our brief. Strict compliance with that rule is required. Explicit findings are required to resolve the dispute. That was not done. This was an unfair sentencing. Those 29 victim impact statements were not even put into the record. This court cannot look at the record the way it is and affirm the sentence. The people who, and talk about extrapolation, the people who testified at trial and the people who took the time to put those victim impact statements together are presumed to be the most damaged. They are not representative. There is no evidence that they're representative. In fact, the evidence is contrary, that they're not representative of the larger group. And that is just a fundamental statistical ---- I'm extrapolating from the fact that they took the time to make those statements. One came to the court. I mean, those people are the ones that were most damaged. So the 100 to 150 estimation, we believe that that was just a mistake of the trial court when you have the specific number of 79 taking place just two pages before. That was, in fact, another procedural error and not a basis for affirming this decision. And finally, on the 5K, what the judge says is that this is just what human beings should do, is cooperate and testify against their Well, I mean, I don't know what world that is, but that's clearly a legal error and a basis for remanding the sentence. And so, finally, we ask under the Washington case cited by Mr. Eddings that the court remand without consideration of the two-point enhancement. The government had its opportunity. It clearly failed in this case. It was an unfair sentencing. It would be very unfair to put Mr. Brown back to square one on this. Thank you very much.
judges: BEA, IKUTA, HURWITZ